# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-2447

_____

United States of America

*Plaintiff - Appellee*

v.

Michael Anthony Lindsey

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: February 12, 2016
Filed: June 28, 2016

_____

Before SHEPHERD, BEAM, and KELLY, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

A jury convicted Michael Lindsey of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  Finding Lindsey subject to the mandatory-minimum sentence of fifteen years imprisonment under the Armed Career Criminal

Act ("ACCA"), 18 U.S.C. § 924(e), the district court[1] sentenced Lindsey to 262 months imprisonment. On appeal, Lindsey challenges (1) the district court's adoption of Lindsey's criminal history as set forth in the Presentence Investigation Report ("PSR") in the absence of further proof of his prior convictions; and (2) the district court's conclusion that a Minnesota second-degree assault conviction constitutes a "violent felony" for ACCA purposes. We affirm.

I.

The facts underlying Lindsey's conviction in the present case are not at issue on appeal, but a brief recitation provides context. In the early morning hours of April 6, 2014, Minneapolis police responded to a report of a drive-by shooting and located a vehicle matching the description of the one from which the shots were fired. Officers stopped the vehicle, identified Lindsey as the driver and only occupant, and found a semiautomatic handgun in the subsequent search of the car. Forensic testing later proved the gun found in Lindsey's car matched the gun used in the drive-by shooting.

A grand jury indicted Lindsey on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). The Indictment specifically alleged Lindsey had previously been convicted of the following crimes in violation of Minnesota state law: Second Degree Assault in 1996, Third Degree Possession of Controlled Substance in 2002, Second Degree Assault and Terroristic Threatening in 2007, and Second Degree Assault in 2011. The Indictment further described Lindsey's previous convictions as "crimes punishable by imprisonment for a term exceeding one year, at least three of which were violent felonies or controlled substance offenses committed on occasions different from one another." Lindsey did

---

[1] The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

not raise any objections in pretrial proceedings regarding the previous convictions referenced in the Indictment. At trial, Lindsey stipulated that he "had been convicted of an offense punishable by a term of imprisonment exceeding one year, and was thus prohibited from possessing a firearm." The jury convicted Lindsey of the charged offense following a two-day trial.

The United States Probation Office prepared a Preliminary PSR that listed the following relevant convictions in Paragraph 17: Second Degree Assault in 1996, Third Degree Controlled Substance Crime–Possession of Cocaine in 2002, Second Degree Assault and Terroristic Threatening in 2007, and Second Degree Assault in 2011. Paragraph 25 of the PSR stated in relevant part, "the defendant has at least three prior convictions for a violent felony or serious drug offense, or both, which were committed on different occasions" and concluded that Lindsey therefore qualified as an armed career criminal under the ACCA. The PSR calculated Lindsey's criminal history category to be VI and his base offense level to be 34, yielding a guideline range of 262 months to 327 months imprisonment.

Lindsey filed timely objections pursuant to the fourteen-day deadline mandated by Minnesota Local Rule 83.10(c) and Federal Rule of Criminal Procedure 32(f)(1). Lindsey objected in detail to Paragraph 17 of the PSR, but focused solely on the issue of the convictions' classification as ACCA predicate offenses. Lindsey's objection to Paragraph 25 stated:

> This paragraph's legal conclusion that the three itemized prior convictions are all qualifying predicate convictions for ACCA status is objected to as unfounded, and Defendant reiterates the legal analysis set forth in the objections to paragraph 17 above. Defendant likewise reiterates his objection to the allegation that he possessed a firearm in connection with a crime of violence.

Lindsey also objected to several paragraphs of the PSR regarding the adjusted offense level, arguing the adjusted offense level should be 12 "[b]ecause Defendant does not qualify as an armed career criminal." In one such objection, Lindsey asserted "[t]he proper advisory range of imprisonment is 30-37 months based on an offense level of 12 and a criminal history category of VI."

Following objections to the Preliminary PSR, the Probation Office submitted a Final PSR to the district court which included the probation officer's response to Lindsey's objections. Later, pursuant to Minnesota Local Rule 83.10(e), the parties each submitted a document entitled "Position Regarding Sentencing." Under the local rule, this filing must:

> (1) set forth the party's position with respect to both the sentencing guidelines and the sentencing factors set forth in 18 U.S.C. § 3553(a);
> (2) specifically identify any issues in dispute;
> (3) state, with respect to each issue in dispute, the extent to which the court can rely on the final [PSR] to resolve the dispute; and
> (4) specifically identify any issues as to which the party requests an evidentiary hearing.

D.Minn. LR 83.10(e). In his Position Regarding Sentencing, filed forty-four days after the Preliminary PSR, Lindsey for the first time objected "to the alleged fact of the convictions in the first place" within his broader argument regarding the convictions' qualifications as crimes of violence or controlled substance offenses. Lindsey then objected to each of the following convictions individually: Second Degree Assault in 1996, Second Degree Assault and Terroristic Threats in 2006, and Second Degree Assault in 2011. In each of those individual objections, Lindsey "object[ed] to all factual allegations in [the paragraph], and specifically to the fact of his alleged convictions, to the facts supposedly giving rise to that offense, and to the legal conclusion that 'this offense is a predicate offense for purposes of [the ACCA.]'" Lindsey did not request an evidentiary hearing on any sentencing issues.

The government, in turn, responded to Lindsey's Position Regarding Sentencing in its own Position Regarding Sentencing filing and maintained that second-degree assault under Minnesota law constituted a violent felony. Prior to sentencing, the government did not present evidence such as charging documents or judgments of convictions entered against Lindsey in criminal proceedings. At the sentencing hearing, defense counsel said in his opening statement, "I have objected to the priors, themselves." In explaining why Minnesota second-degree assault qualifies as an ACCA predicate, the district court referred to Lindsey's second-degree assault convictions as "his three Minnesota convictions for second-degree assault." Defense counsel objected, stating "[t]he Eighth Circuit has been clear that facts contained in the Presentence Report that are objected to cannot be used by the Court for any substantive purposes at sentencing. And I have objected even to the fact of convictions in the Presentence Report. So, I would object to the Court's findings on that basis, in addition to the rest of the record I have made." Defense counsel made no further argument or objection to the fact of Lindsey's prior second-degree assault convictions.

The district court determined that the elements of assault under Minnesota state statutes categorically satisfied the definition of "violent crimes" under the ACCA, which requires the "use, attempted use, or threatened use of physical force." Based on the fact that Lindsey possessed the firearm "when he shot at a victim and the victim's vehicle while driving by," the district court overruled Lindsey's objection to a four-level enhancement to the offense level based on his use or possession of a firearm in connection with another felony offense. Pursuant to the guidelines range calculated by the final PSR, the district court imposed a sentence of 262 months imprisonment. This appeal followed.

-5-

## II.

On appeal, Lindsey first argues the district court erred when it imposed a sentence pursuant to the ACCA, as set forth in 18 U.S.C. § 924(e)(1), because no qualifying conviction was proven. Although the Indictment, Preliminary PSR, and Final PSR in Lindsey's case each listed three prior convictions for second-degree assault, Lindsey contends that the government failed to present evidence of the fact of the convictions and the district court therefore erred in adopting, over his objections, the criminal history as set forth in the PSR. We review a district court's factual findings for clear error and its interpretation and application of the guidelines de novo. United States v. Jokhoo, 806 F.3d 1137, 1140 (8th Cir. 2015).

Federal Rule of Criminal Procedure 32(f)(1) provides that, "[w]ithin 14 days after receiving the presentence report, the parties must state in writing any objections, including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report." The Local Rules for the District of Minnesota likewise require the parties, "[b]y the deadline set by the probation officer in compliance with Fed. R. Crim. P. 32(f)" to "state in writing any objections to the preliminary presentence report, including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report." D. Minn. LR 83.10(c)(1). The district court "may, for good cause, change" the time limit prescribed in Fed. R. Crim. P. 32(f)(1), parties may seek permission from the district court to lodge an untimely objection to the PSR, and the district court retains discretion to allow such new objections upon a showing of good cause. See Fed. R. Crim. P. 32(b)(2); D. Minn. 83.10(c)(3); Fed. R. Crim. P. 32(i)(1)(D).

Fourteen days after the Probation Office filed the Preliminary PSR, defense counsel submitted an Objections Letter. However, Lindsey did not file a motion pursuant to Local Rule 83.10 or Federal Rule 32 requesting permission to lodge an untimely objection, or to enlarge the time to object, nor did he make a showing of

good cause for a late objection at any point. Thus, because the Objections Letter contained the only objections to the PSR timely filed by Lindsey within the fourteen-day deadline mandated by both federal and local rules, we look only to those objections to determine whether Lindsey properly objected to the fact of his convictions.

Upon review of the objections timely filed by Lindsey, we fail to find any objection to the fact of his three second-degree assault convictions. Instead, Lindsey stated the "legal conclusion that the three itemized prior convictions are all qualifying predicate convictions for ACCA status is objected to as unfounded." We first note that Lindsey did not refer to the convictions as "alleged convictions" as would be expected if he intended to object to the existence of the convictions. Further, the structure of the sentence, in which "legal conclusion" is the subject, focuses the objection on the Probation Office's legal conclusion regarding the convictions' ACCA status rather than the fact of the convictions themselves.

We next examine whether the use of the word "unfounded" supports an objection to the fact of the convictions. "Unfounded" is defined as: "(1) bottomless, unstable;" "(2) lacking a sound basis in reason or fact." Webster's Third New International Dictionary, 2496 (1986). This word choice, then, seems to suggest, if anything, a challenge to the basis of the convictions Lindsey incurred in the past rather than a challenge to the fact of the convictions. To say that the convictions "lack[] a sound basis in . . . fact" asserts a collateral attack on the convictions themselves. Collateral attacks on prior convictions used for sentencing purposes are impermissible. See Custis v. United States, 511 U.S. 485, 490-91 (1994) (holding that 18 U.S.C. § 924(e) "focuses on the *fact* of the conviction and nothing suggests that the prior final conviction may be subject to collateral attack for potential constitutional errors before it may be counted."); United States v. Rounsavall, 115 F.3d 561, 566 (8th Cir. 1997) ("Without statutory authority, a defendant cannot collaterally attack prior convictions used to enhance his sentence."). We conclude

-7-

that, in his timely response to the PSR, Lindsey failed to object to the fact of the convictions themselves.

Lindsey argues on appeal that he "very clearly objected both to the fact of each of the alleged predicate convictions in the PSR, and to the legal conclusion that the alleged convictions qualified as ACCA predicates." He contends that he "did so in writing in his formal sentencing memorandum filed a week before sentencing." However, such an objection, if made, would have been untimely. The Probation Office filed the Preliminary PSR on May 12, 2015. Lindsey's objections were therefore due on May 26, 2015 in order to comply with Federal Rule 32(f)(1) and Local Rule 83.10(c). The Defendant's Position Regarding Sentencing and Motion for Guidelines Departure was filed on June 25, 2015, thirty days past the deadline for objections. As previously noted, Lindsey never filed a motion requesting permission to make an untimely objection, never moved for an enlargement of time to file objections, nor showed good cause as to why an untimely objection should be considered by the district court, or requested an evidentiary hearing on the issue of the fact of his prior convictions. The dialogue between defense counsel and the district court at the sentencing hearing likewise occurred after the deadline for objections. Any attacks on the fact of the convictions beyond the Objections Letter filed May 26, 2015 are therefore untimely and cannot be considered by the courts.

In the absence of a clearly stated, timely objection to the fact or existence of his prior convictions, the district court did not clearly err in recognizing the three second-degree assault convictions listed in the PSR. Although it is true that a PSR "is not evidence and is not a legally sufficient basis for making findings on contested issues of material fact," United States v. Richey, 758 F.3d 999, 1002 (8th Cir. 2014) (internal quotation omitted), it is also well established that "a district court may regard as true facts contained in the presentence report to which no specific objection is made." United States v. May, 413 F.3d 841, 849 (8th Cir. 2005) (citations omitted). In fact, the district court "may accept any undisputed portion of the

-8-

presentence report as a finding of fact" pursuant to Federal Rule of Criminal Procedure 32(i)(3)(A). We have explicitly held that the conjunction of Federal Rules 32(f)(1) and 32(i)(3)(A) "establish that an untimely objection to a fact in the presentence report does not change the fact's 'undisputed' status, and the district court may adopt the fact without requiring any additional evidence." May, 413 F.3d at 849. Because any objection made in Defendant's Position Regarding Sentencing memorandum or at the sentencing hearing was untimely, the existence of Lindsey's convictions remained undisputed facts which the district court properly adopted.

Finally, we reject the contention that the Local Rules in Minnesota, specifically Local Rule 83.10(c), extend the deadline for objections beyond the fourteen-day timeline allowed by Federal Rule 32(f)(1), as a district court may only promulgate local rules that are consistent with federal statutes and rules. See Fed. R. Crim. P. 57(a)(1). Indeed, it is apparent that Local Rule 83.10(c) does not concern the making of objections to information contained in a PSR but, by its terms, clearly provides a pre-hearing vehicle for a defendant and the government to identify and narrow the issues which must be decided by the district court and the parties' positions thereon, and it does not authorize the making of new objections. Therefore, we hold that Lindsey failed to make a valid and timely objection to the fact of his prior second-degree assault convictions, and the district court did not clearly err in basing Lindsey's sentence on these prior convictions listed in the PSR.

III.

Lindsey next argues that, even if we conclude the district court did not err in relying on the three second-degree assault convictions listed in the PSR when it sentenced him under the ACCA, those convictions do not qualify as predicate violent felonies for ACCA purposes. We review de novo a district court's finding that a defendant's prior conviction constitutes a violent felony for purposes of the ACCA. United States v. Boaz, 558 F.3d 800, 806 (8th Cir. 2009).

The ACCA applies only when a defendant is convicted under § 922(g) and has three prior convictions for violent felonies or serious drug offenses. 18 U.S.C. § 924(e)(1). The definition of "violent felony" under the ACCA includes, under the "elements clause," any felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another." The statute imposes a mandatory-minimum sentence of fifteen years imprisonment. § 924(e)(1). Courts apply a "categorical approach," looking only to the fact of conviction and the statutory definition of the past offense, to determine whether a prior conviction qualifies as a violent felony as set forth in the elements clause. Taylor v. United States, 495 U.S. 575, 602 (1990); United States v. Tucker, 740 F.3d 1177, 1179 (8th Cir. 2014) (en banc).

Minnesota's second-degree assault statute provides:

Subdivision 1. Dangerous weapon. Whoever assaults another with a dangerous weapon may be sentenced to imprisonment for not more than seven years or to payment of a fine of not more than $14,000, or both. Subdivision 2. Dangerous weapon; substantial bodily harm. Whoever assaults another with a dangerous weapon and inflicts substantial bodily harm may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $20,000, or both.

Minn. Stat. § 609.222. Minnesota defines "dangerous weapon" as "any firearm, whether loaded or unloaded," "any device designed as a weapon and capable of producing death or great bodily harm," "any combustible or flammable liquid or other device or instrumentality that, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm," or "any fire that is used to produce death or great bodily harm." Minn. Stat. § 609.02 subd. 6. "Assault" is defined under Minnesota law as: "(1) an act done with intent to cause fear in another of immediate bodily harm or death; or (2) the intentional infliction of or attempt to inflict bodily harm upon another." Minn. Stat. § 609.02 subd. 10. Part (1) of the

statutory provision defining assault is known as "assault-fear" while Part (2) is known as "assault-harm." See State v. Fleck, 810 N.W.2d 303, 308 (Minn. 2012).

Lindsey contends that second-degree assault with a dangerous weapon, under Minnesota law, does not constitute a violent felony for ACCA purposes because it does not categorically require the use, attempted use, or threatened use of physical force. Specifically, Lindsey argues that Minnesota's assault statutes, as written, do not qualify as ACCA predicates because "assault-fear" felonies include assaults that lack a physical force element and "assault-harm" felonies require only bodily harm, which can be inflicted without the use of physical force, such as when a defendant administers poison to a victim, draws a bath for the victim using scalding hot water, or exposes the victim to excessive ultraviolet radiation by intentionally leaving a tanning bed on for too long. Therefore, Lindsey claims that his three second-degree assault convictions do not qualify as ACCA predicates, and the enhanced sentence under the ACCA should not have been imposed by the district court.

Lindsey's arguments are foreclosed by our recent decision involving Minnesota's misdemeanor domestic assault statute, which employs language virtually identical to Minnesota's second-degree assault statute, where we held that such a conviction qualified as a violent felony for ACCA purposes. United States v. Schaffer, 818 F.3d 796, 798 (8th Cir. 2016). There, we examined Minn. Stat. § 609.2242 subd. 1(1), which defines assault as "an act with intent to cause fear in another of immediate bodily harm or death." Id. Such statutory language, we held, "has as an element the 'threatened use of physical force against the person of another.'" Id. (quoting 18 U.S.C. § 924(e)(2)(B)(i)). Like Lindsey, the defendant in Schaffer argued that the statute under which he was convicted could allow a conviction based on acts that do not involve violent physical force, offering the example of a defendant exposing the victim to a deadly virus. Id. In Schaffer, we rejected the defendant's argument in light of our holding in United States v. Rice, 813 F.3d 704, 706 (8th Cir. 2016) and the Supreme Court's holding in United States v.

-11-

Castleman, 134 S. Ct. 1405, 1415 (2014). We apply the same reasoning today. "That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter." Castleman, 134 S. Ct. at 1415. Finally, in a separate, unpublished decision, we held the exact statute at issue in this case, Minn. Stat. § 609.222, qualified as a predicate violent felony pursuant to the ACCA. United States v. Harvey, No. 15-1771, 2016 WL 1696816 at *1 (8th Cir. Apr. 28, 2016) (per curiam) (unpublished). Lindsey fails to cite precedent in which a similarly phrased assault statute did not qualify as an ACCA predicate.

Accordingly, we hold that second-degree assault under Minn. Stat. § 609.222 requires the use, attempted use, or threatened use of physical force against another and therefore qualifies as a violent felony for ACCA purposes. The district court properly counted each of Lindsey's three second-degree assault convictions as ACCA predicates and sentenced him accordingly.

IV.

For the foregoing reasons, we affirm the district court's sentencing decision.

_____